## HARTFORD ACCIDENT & INDEMNITY CO. v. NEIMAN–MARCUS CO.
### (No. 656–4529.)

(Commission of Appeals of Texas, Section B. June 16, 1926.)

**1. Insurance ⊜⊃177.**

Employees' fidelity bond may provide that insurer shall be liable only for defalcations discovered within any twelve-month period or within three months thereafter.

**2. Contracts ⊜⊃152.**

Contract must be construed, whenever possible, so as to give effect to all of its provisions.

**3. Insurance ⊜⊃612(2) — Stipulation in employees' fidelity bond requiring claim for loss to be made within specified time held, in view of further stipulation as to notice, not to relate to notice so as to be invalid under statute as to conditions precedent to suit (Rev. St. 1925, art. 5546).**

Stipulation in employees' fidelity bond requiring claim for loss to be made within three months after termination of suretyship, or within three months after date of expiration of each twelve-month period during continuance of bond, *held* not to relate to notice of claim so as to be invalid under Rev. St. 1925, art. 5546, as to conditions precedent to suit, in view of further stipulation requiring immediate notice of loss to be followed by a claim in 60 days.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by the Neiman-Marcus Company against the Hartford Accident & Indemnity Company. Judgment for plaintiff was af-

firmed by the Court of Civil Appeals (277 S. W. 201), and defendant brings error. Reversed and rendered.

Eckford, Whisenant & McMahan, of Dallas, for plaintiff in error.

Thompson, Knight, Baker & Harris, of Dallas, for defendant in error.

POWELL, P. J. This case is stated fully by the Court of Civil Appeals. See 277 S. W. 201. Briefly stated, it was a suit instituted by defendant in error in the district court of Dallas county, seeking recovery of $2,562.46 alleged to be due it by plaintiff in error by reason of a bond the latter had issued for defalcations of credit manager of defendant in error., The district court rendered judgment as sued for, and the Court of Civil Appeals affirmed that judgment.

During the two annual periods of said bond from December 13, 1918, to December 13, 1920, the embezzlements of the credit manager amounted to $2,112.46. His embezzlements during the annual period from December 13, 1920, to December 13, 1921, amounted to $450. The latter were discovered by defendant in error in 1923 when claim was made therefor. The former embezzlements mentioned were discovered by defendant in error about December 21, 1921, when the credit manager was discharged and claim made upon the insurance company by his employer. It will be observed that neither of these claims was presented during the twelve-month period when the embezzlements occurred nor within three months after the date of expiration of such twelve-month period. Being in violation of section 8 of the policy, to which we shall hereafter allude, the company declined payment.

The record shows that the bonding company did pay defendant in error $2,206.22, for which claims were presented in time.

The correct determination of this case depends upon the proper construction of the provisions of the policy contract. The applicable portions thereof are quoted as follows from the opinion of the Court of Civil Appeals:

" 'The Hartford Accident & Indemnity Company (hereinafter called the surety), in consideration of an agreed premium, binds itself to pay to Neiman-Marcus Company, Dallas, Texas (hereinafter called the employer), within sixty (60) days after satisfactory proof thereof, such pecuniary loss as the employer shall have sustained of money or other personal property (including money or other personal property for which the employer is responsible) through larceny or embezzlement committed by any of the employees named upon the schedule attached hereto and made a part hereof, in the position in the employer's service designated in said schedule during the period commencing with the respective dates set opposite the names of the employees in said schedule, and ending with the termination of the suretyship for any em-

ployee by his dismissal or retirement from the service of the employer, by the discovery of loss thereunder, or by cancellation by the employer or the surety.

" 'The foregoing is subject to the following conditions, which shall be conditions precedent to any recovery hereunder: * * *

" '(4) The employer, immediately on becoming aware of any act giving rise to a claim hereunder, or facts indicating such acts, shall notify the surety at its home office, by telegraph and registered letter giving all known particulars, and, within sixty (60) days after discovery of any loss, shall file with the surety an itemized statement thereof under oath and shall produce for investigation such books, vouchers, and evidence in his possession as the surety may require. * * *

" '(8) Any claim hereunder must be made within three (3) months after the termination of the suretyship for any employee, or within three (3) months after the date of expiration of each and every period of twelve (12) months from the beginning of the suretyship for any employee, during the continuance of this bond, as to the acts or defaults of said employee committed during any such period of twelve (12) months. * * *

" '(10) No action or proceeding to recover hereunder shall be brought unless commenced within a period of six (6) months after the employer shall have given notice of such claim, as required hereunder.'

"Said schedule bond had attached thereto schedules of the various employees, among them, C. C. Compton, credit manager, effective of date December 13, 1918; that the acceptance notice of said Compton, being added to said schedule, among other things provided:

" 'This acceptance notice is issued with the distinct understanding that the liability of the Hartford Accident & Indemnity Company shall under no circumstances be cumulative, and shall not exceed the amount of bond in effect as to any employee or employees when the dishonest act of the employee or employees shall have been committed, and shall in no event exceed the maximum amount at any time specified as to such employee or employees.'

"It was further established that:

" 'Upon the written application of appellee, the bond was renewed on the 10th day of March, 1919, for a year, and again renewed on the 10th day of March, 1920; that the 12 months' period for each employee was from the date his name was originally added to said schedule, and that said C. C. Compton's name was added on December 13, 1918.' "

The nature of the contention of plaintiff in error is well stated by the Court of Civil Appeals in the following language:

"Appellant in the court below contended, and now contends, that the meaning of section 8, supra, is that appellant limited its liability under said bond to become liable for defalcations of Compton occurring within any annual period of the bond and discovered by appellee within said twelve months period or within three months thereafter; that said provision was for the benefit of appellant, in that it required diligence on the part of appellee to discover defalcations of said Compton within the time fixed in order to hold appellant liable under the terms of said bond, and protected itself against negligence or carelessness or indifference on the part of appellee, in that it fixed the time limit within which defalcations of an employee should be discovered in order to render appellant liable under the terms of said bond. That appellant could have properly so limited its liability without contravening said article 5546, supra, there can be no question. Fidelity & Cas. Co. of N. Y. v. Cont. Natl. Bank, 71 F. 116, 17 C. C. A. 641; Ballard County Bank, Assignee, v. U. S. F. & G. Co., 150 Ky. 256, 150 S. W. 1; Guaranty Co. of N. A. v. Mech. Sav. Bank & Trust Co., 183 U. S. 402, 22 S. Ct. 124, 46 L. Ed. 253, 256; Larrabee v. Title Guaranty & Surety Co., 250 Pa. 135, 95 A. 416, L. R. A. 1916F, 709; Proctor Coal Co. v. U. S. Fid. & G. Co. (C. C.) 124 F. 424."

On the other hand, defendant in error contends that section 8 was intended by the contracting parties to refer to a notice of claim and must be stricken down by the courts because in contravention of article 5546 of Revised Civil Statutes of 1925 (article 5714 of Revised Civil Statutes of 1911).

If section 8 was included by the parties for the latter purpose, as concluded by the Court of Civil Appeals, then it cannot be enforced for the reason that it does contravene the statute aforesaid. On the other hand, if it had nothing to do with the requirement for *notice* of a claim, then the contention of plaintiff in error, as already quoted, must be sustained.

[1] As stated by the Court of Civil Appeals, it is clear that the authorities sustain the right of the company to afford itself the protection now contended for. The Texas cases are just as strong as those cited by the Court of Civil Appeals, although not exactly upon the *same kind* of *condition precedent*. But our Texas courts do hold that there is a vast difference between a *notice* of a claim, controlled by the statute in question, and other requirements which constitute conditions precedent to recovery. In this connection, we cite the following Texas cases: Delaware Underwriters v. Brock, 109 Tex. 425, 211 S. W. 779; American Surety Co. v. Blaine (Tex. Civ. App.) 272 S. W. 828 (writ of error denied): Burns v. American National Insurance Co. (Tex. Com. App.) 280 S. W. 762.

This difference has been admirably stated by Justice Greenwood in the Brock Case, supra, as follows:

"We regard Judge Stayton's opinion as decisive of the question before us, whether this loss be regarded as total or partial. Article 5714, R. S., cannot change the date of payment as expressly stipulated for in the policy contract with relation to the required statement under oath of the insured's knowledge and belief as to the time and origin of the fire and like matters, no matter whether it does or does not dispense with the immediate notice required by the policy. The statute obviously cannot apply beyond the matter of notice of the claim for loss or damage to the insured property. The policy

just as obviously does require something more than notice, and something essentially different from mere notice. That which is required has very positive value to the insurer, wholly apart from carrying to him notice of a claim for loss or damage. Watertown Fire Ins. Co. v. Grover, 41 Mich. 131, 1 N. W. 961, 32 Am. Rep. 147."

[2, 3] Since the law seems well settled, let us look to the policy and see what is the reasonable construction thereof as written by the parties. Obviously, section 4 is the *notice of claim* section of the policy. It expressly refers to *notice*. While the question is not before us, it seems that this section does contravene the *notice* article of our statutes. But it was the company's method of requiring *notice*. If the policy contravened the statute in this respect, the company must suffer the consequences. Reading this policy as a whole, the parties intended to provide that immediately upon the discovery of fraud, notice was to be sent to the home office of the company; that, within 60 days thereafter, the insured should file with the company an itemized verified statement of the loss and produce such books as the company might require; that suit must be brought within a period of six months after the employer should have given the notice of such claim. The only notice referred to is in section 4. That section, together with section 10 quoted by us, clearly provide for the procedure we have just outlined. But such procedure is further limited by and subject to the provisions of section 8, which is in effect the prescribing of a period of limitation against any action on the bond. In other words, under the terms of this contract, when fraud is discovered, the procedure is outlined in sections 4 and 10. But under section 8, it must be discovered, either during the twelve-month period of the bond, or within three months after the date of expiration of any twelve-month period. If the employer, by diligence, does not discover the fraud some time during the insurance year when such fraud is taking place, or in three months thereafter, he has no cause of action under the terms of this policy. This is a valuable right for the insurance company. As already stated, the Court of Civil Appeals admits that it is a provision which is enforced by the courts. Where the insured agrees to it, he is bound by it. It causes the insured to be watchful at all times. Furthermore, it gives the insurance company a chance to protect itself as far as possible while the fraudulent situation is fresh and something might be conserved.

It seems to us that it is unreasonable to assume that the parties intended to have sections 4 and 8 both refer to notice of claims. Under section 4, the immediate notice there required must be followed by a claim in 60 days. That provision is in direct conflict with section 8, prescribing a claim in three months, if the Court of Civil Appeals is correct in construing the latter section as a notice section also. Both sections cannot stand, as we see it, except under our construction of the contract. It is elementary that contracts must be construed, wherever possible, so as to give effect to all provisions therein contained.

The first section of the bond does definitely agree to pay defalcations arising in any given year, but this promise is expressly *subject* to conditions precedent, of which section 8 is one. And section 8 is a statute of limitation requiring that the cause of action must be discovered in time to be asserted not later than three months after the expiration of the insurance year during which the defalcations occurred. While section 8 does not use the word "discover," it really does use it by necessary implication, because no claim under this bond could be made or asserted until fraud be discovered. Defendant in error must have known that it could not make claim until the fraud was discovered. And, knowing that the claim must be asserted within a certain time, the insured knew it must discover the fraud within that same time.

A very able opinion has been written by the Supreme Court of Pennsylvania in the case of Larrabee v. Surety Co., 250 Pa. 135, 95 A. 416, L. R. A. 1916F, 709. It reviews the authorities on the reasons for this protective provision in policies of this kind. The policy in the Larrabee suit is much like the one in the case at bar. We quote briefly from the opinion of the court in that case as follows:

"No other provision in the bond changes or modifies in any manner the limitation of the surety company's liability to the embezzlement or larceny of an employé committed during the term for which the bond was given, to wit, one year from November 15, 1909, and discovered during said term or within three months thereafter. Upon the failure of the insured to discover, during the term of the bond or within three months thereafter, fraud or dishonesty, amounting to embezzlement or larceny, committed by one or more of the bonded officials during the term of the bond, all liability upon the same ceased by its own plain terms, unless some act or fraud on the part of the bonding company estopped it from standing on what was nominated in the bond."

Believing that section 8 is in no wise within our notice of claim statute and not governed thereby, we think it is a condition precedent which must be enforced. If enforced, it is clear that the claims sued upon were barred when the suit was instituted. Therefore we think judgment should be here rendered for plaintiff in error.

We recommend that the judgments of the district court and Court of Civil Appeals be reversed, and judgment rendered by the Supreme Court in favor of plaintiff in error.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reversed, and judgment rendered for plaintiff in error.