MUMBY, STOCKTON & KNIGHT, APPELLANTS, vs. BOWDEN & ROSENTHAL, APPELLEES.

1. Where a contractor is employed to do a job of work and the work is done by him, his servants or laborers, in such negligent manner as to cause injury or damage to a third person, he, and not his employer, is responsible to the party injured or damaged ; but

this rule does not apply where the employer has control and direction of the work. In that case he is liable.

2. M., S. & K., landlords of B. & R., undertook to repair a gutter over the partition wall between their adjoining stores, and there was such negligence in the work as to cause damage to the goods of the tenants, B. & R., who sued the landlords to recover for the damage. The defence of M., S. & K., that they employed a contracting company, through its foreman, to do the job, and the workmen who did it were the servants of the company: *Held*, Not to be sustained, because from the facts it appears that the control of the work was not in the company, but in M., S. & K.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion of the court.

*Fleming & Daniel* for Appellants.

*Hartridge & Young* for Appellees.

MAXWELL, J.: The appellants are owners of a building in Jacksonville, one side of which they occupy for business of their own, and the other side they leased to the appellees, who use it in a general dry goods business. While so using it their goods were damaged by rain water coming in through the roof, and they sue appellants to recover for the amount of damage, basing their action on alleged negligence of appellants in repairing the roof. The negligence alleged in the declaration consists principally in this, that appellants went upon the roof with their servants, and undertook to repair the gutter on the roof, and by their said servants so carelessly, negligently and improperly did the work, removing said gutter, that by reason thereof large quantities of rain water ran and flowed through the aperture made by such negligent work into the store house of appellees and injured, wetted and greatly damaged divers articles of goods and merchandise kept for sale in said store house. The

pleas were, not guilty, and a denial that appellants or their servants committed the acts charged in the declaration. The case was tried by a referee, who found against appellants and gave judgment for $873.29, whereupon they appealed.

The only contention before this court for appellants is, that they are not responsible for the negligence which caused the damage complained of. The damage is admitted, but it is said in their behalf that they employed a certain company to do the work, and that the men who in doing it were guilty of the negligence were not their servants, but servants of the company, wherefore no liability attached to them. They plant themselves upon the doctrine that where one employs a contractor to do a job of work and the contractor, or his laborers or servants, does it in such negligent manner as to cause injury or damage to a third person, the employer is not responsible for the damage; citing Addison on Torts, 507-8; Stevens vs. Armstrong, 6 N. Y., 435: Hilliard vs. Richardson, 3 Gray, 349; Scammon vs. Chicago, 25 Ill., 424; Clark vs. Fry, 8 O. S., 358, and Eaton vs. E. & N. A. Ry. Co., 59 Me., 520. It will be seen from looking into these authorities that in order to relieve the employer from liability, the employment must be for work that is given into the independent control of the employee or contractor. Addison says the contractor is liable—"provided always the workman is an ordinary laborer, personally engaged in the execution of the work, acting under the control of the master, and not a contractor exercising an independent employment, and selecting his own servants and workmen for the performance of the work." And in the cases cited, where the contracts were for work let to contractors, the liability of the contractors, and not of the employers, was put upon the same ground. The premises and work in those cases were surrendered to the control of the contractors, and the

damages complained of were caused by work done by the laborers or servants of the contractors. The employers were not liable because the control of the work was given by them to the contractors, and the execution of the work was by servants engaged by and for the contractors. The court says, in Clark vs. Fry, " the liability of the master to answer for the conduct of his servant (in case of injury done by the servant while in the exercise of his employment) * * is founded on the superintendence and control which the master is supposed to exercise over his servant." That seems to be the distinguishing criterion—by whom were the workmen employed, and in whose control were they ? The case of Stevens vs. Armstrong, which was not one of employer and contractor, emphasizes the distinction. A. sold a box to P., and P. promised to send his porter to take it away. The box was in the loft of A's. store, and the porter in getting it down through negligence suffered it to fall on S., who was injured thereby, and sued A. The court held that as the work was for P., and the negligence was that of his servant, A. was not liable. That was because the work was under the control of P., not of A., though done on A's. premises, and is in keeping with the other cases on the idea that the control of both the premises and the work must concur in the contractor to relieve the employer from liability. In those the premises were surrendered to the contractor for the time being, and were, as well as the work, under his control ; while in Stephens vs. Armstrong there was want of concurrence, in the fact that the work was being done for and under the control of one not in control of the premises.

Testing the present case by the rule gathered from these authorities, we find that the evidence shows that appellants employed one McMillan to repair the gutter, from the leak of which the goods of appellees were damaged, and that

McMillan was the foreman of the George F. Drew Hardware Company, who were engaged in having such work done, and that an under-workman of McMillan was sent by him to do the job, assisted by a carpenter of appellants, who was furnished at the request of McMillan. Knight, one of the appellants, says he employed the Drew Company, through their foreman, McMillan, and did not speak to any member of that company. The job to be done was a light one, requiring the work of two men for only a few hours. There was no occasion for the surrender of the premises, and there was none. The workmen went upon the roof to repair the gutter, but not under a contract which took from appellants the control of the roof. In fact, there is a circumstance or two in the evidence which seems to indicate that the work was under their control. McMillan explained to one of them what he thought was best to effect the re-repair, and he was told " all right, go ahead." Again, one of them says, " I distinctly told (McMillan) to do (the work) when he thought there was not going to be any rain." These directions are inconsistent with the notion that appellants did not have control of the work. And it is not to be said, that because McMillan or the Drew Company was employed, and were in the business of contractors for such work, that their employment in this particular instance, was in the character of contractors upon whom was cast any responsibility except to appellants. The work was for appellants, it was on their premises, which remained in their control, and it was under their direction. We say the premises were under their control, because they were having the work done as landlords, at the request of their tenants ; and besides, the gutter was over the partition wall between the two stores of appellants, one occupied by themselves, and the other by appellees as their tenants, and the work was as necessary to prevent leaking into the store occu-

pied by them as into the other. So, the facts as to both premises and work concur to show control by appellants such as fastens responsibility on them for the negligence from which came the damage. In legal contemplation the laborers doing the work were their servants for that particlar job, and this is the test of responsibility.

Another feature of the case is, that by one clause of the lease under which appellees held the store, they agreed to keep the premises in good repair. If from this it is to be considered that the repair of the gutter was work to be done on their account, then appellants must be considered as their employees to have it done. In this aspect, it cannot be doubted that under any employment they had control and direction of the work, and that those employed by them were their servants; for it would be supremely idle to say that the persons employed by them for such a job were sub-contractors, upon whom fell the responsibility for any negligence in executing it. But in another clause of the lease, it is stipulated " that the lessor, or any person by his order, shall be permitted to enter said premises at all times, to examine the same, and make such repairs * * as he may consider necessary for the preservation thereof." This seems to be inconsistent with the former clause, devolving the duty of repairs upon the lessee, but we are relieved of the labor of construing these clauses to make consistency, or to give one force over the other by the fact that in the instance before us, both parties acted under the impression that it was the duty of appellants to keep the gutter in repair, if it is true, as testified by Mumby, that the work was done on request of one of the appellees, Bowden. In that aspect, there can be little question as to the liability of appellants. But Bowden denies that he requested appellants to repair the gutter, and explains that the request Mumby refers to was in regard to another leak in the skylight of the one-story

part of the building; and he says further, that at that time there was no leak in the gutter on their side of the partition wall. If this is true, and the work was undertaken without request of the appellees, and because of leakage on appellants' side of the partition wall, and therefore on their own account, it makes the case stronger against them. The common law, which has not been changed by statute in this State, threw the burden of repairs upon the tenant, unless the landlord agreed to have them made. Taylor's Landlord and Tenant, section 327. But if he agrees to make them, it is a duty he owes his tenant to see that the repairs are properly kept up. And here the relation of landlord and tenant raises an obligation as to negligence distinct from any question arising from negligence in making repairs. Where the building is under the supervision and control of the landlord, he is responsible for any negligence that results in damage to his tenant from rain through a defective roof. Toole vs. Beckett, 67 Me., 544. And where a landlord occupies the upper story of a building, the lower story of which is let to a tenant, and the landlord employs a mechanic to put a skylight in the roof, who neglected to cover the same, so that it rained through the opening and damaged the goods of the tenant in the lower story, the landlord will be liable to the tenant for the negligence of the mechanic. Glickauf vs. Maurer, 75 Ill., 289. This is because the landlord is in control of the part of the building from which the injury proceeds. And the court distinguishes this case from that in 25 Ill., *supra*, on the ground that though in the latter the carpenter had control of the work, he did not, as in the former, have entire possession of the premises. The court uses this pertinent language: "It would be a strange doctrine, indeed, to hold that appellants could lease the first story of a building to appellee and receive the rent, and then employ a carpenter to remove the

roof, in consequence of which a valuable stock of goods should be destroyed, and then take refuge behind the men they had caused to do an act from which the damages resulted." The case is not precisely parallel to the one at bar, as to occupancy of the premises, but it is as to the control of the premises existing at the time the negligence which caused the damage occurred.

We think appellants are liable under the law as applied to the facts of this case, and will, therefore, affirm the judgment.